Case No. 16-1830, Representative Distribution Service of Inc. and Distribution Corporation, Representative United Parcel Service Inc., Delaware, et al. Are you going to want to receive 15 minutes per side? Mr. Sadowsky, you may proceed for the appellant. May it please the Court, Jeff Sadowski, Royal Oak, Michigan, Howard & Howard, for the plaintiff and the appellant. I am cutting my time 10 for the name and 5 for rebuttal. All right. You may proceed. Thank you, Your Honor. This case is a classic case of reverse trademark confusion. We cited the Maritec case below as the predominant authority on this. And in the Maritec case, it was Maritec case reversed to summary judgment merely on the fact that the evidence showed that there was a, that the other side, the defendant, took over the mark so it appeared to own the senior user's mark. The evidence, once it was shown that the mark, it was saturated by the defendant and that it overwhelmed the plaintiff, the Sixth Circuit reversed the summary judgment motion and then went on to talk about a lens in which to look at the factors, the individual factors. In the court below, did not use a Maritec at all, even though that was our principal case. We cited it at page 9 and 10 of our brief. The waiver argument that's made here is not supported. I mean, we argued it. We didn't have oral argument, I should add. We never had oral argument. We had one brief. The brief had a lot of moving parts to it. But this was mentioned on pages 9 and 10 of our brief and waiver is not even remotely in order here. But the mark is order link. Order link for order fulfillment services. We have incontestable trademark registration. And in the case of reverse confusion, for example, in the Maritec case, Maritec understood that the senior user's mark was going to be, it's a small company, so it's going to be a lesser dominant mark than the junior user. In this case, UPS is the dominant mark with 16th most well-known brand in the world, $42 billion they value the brand at. They sell $58 billion a year. They give away our services for free. They tend to, in the course here, we showed that they saturated the market with over 2 trillion uses of the mark relative to the services on the Internet. The Internet is a very significant portion of what we do. And once UPS started using the mark, the Internet as a source of customers and prospects for us just disappeared. We went to zero. Where previous to that, we would spend a certain spend and get a certain response. But in the case here, we have also that the district court found on summary judgment that there was no likelihood of confusion. Now, the district court ignored the Maritec standards, as I mentioned. The district court ignored facts that we presented that supported those standards. In fact, the district court ignored the entire declaration of John McGovern that we presented to the district court. The Maritec court, as I said, the Maritec court would have just decided this merely on that. But the court also applied the wrong standard here. They applied a preliminary junction standard versus summary judgment standard. And I believe the JBL case that we cited recites that and would control, although it's coming out of the Ninth Circuit, it defines everything in reverse to summary judgment on that element. Does the entire disposition of this case rest upon or mostly rest upon the likelihood of confusion? And if so, where did the district court go wrong in its decision? Well, there's two points to that. First, the premise for a reverse confusion case has elements to it that suggest, for example, that the elements are that it differs from forward confusion. And rather than stealing the senior user's goodwill, the junior user saturates the market. The junior user overwhelms the senior user. The public comes to assume that the senior user owns the mark. That's the initial premise. We provided evidence on that. They never responded to that. The judge did not comment on that, even though that was the Maritec standard. Then you go, if you need to, you go to the factors. How much weight is to be accorded to that factor? It's not so much a factor. It's a foundational element. And in the Maritec, they said once that foundational element was determined, that they reversed summary judgment. And then they looked at the factors through that lens to support. Now, in the district court, for example, with regard to intent, UPS openly states that they intended to take the mark. They wanted to own the mark. They added UPS to the order link to take the mark. They knew about our incontestable registration right from the get-go, and they were told by their in-house brand manager that they couldn't use it. Saying it is owned by UPS is classic reverse confusion. They didn't have any attorney advice through this process. They didn't make any mistake. This was not accident. This was not inadvertence. They intended to take the mark, knowing full well that we had a registration. We told them that they couldn't use the mark, and they continued to use the mark, kept going full bore. Counsel, you said that Judge Quist applied the legal standard of a preliminary injunction. He did not apply summary judgment standard. On page 5 of his opinion, he says, it's section 2, summary judgment standard. He at least purports to apply the law of summary judgment, does he not? He states the standard, and then he doesn't follow it. You just don't like the way he balanced the factors, or what? Well, he didn't. You told me he applies the wrong legal standard. I don't think that's correct. You may not like the way he balanced the factors in the case, but to say that he didn't know what the law is, I think, is a stretch here. No. He knows what the law is, right? He cited the law. Where does he cite the preliminary injunction standards? He doesn't. Okay. You were just reading that in because you don't like his decision. Not true. In the summary judgment standards in trademark law, you can balance the factors, but you can't balance facts. You can't weigh facts. You have to view the facts in a light most favorable to the plaintiff. So you're saying he didn't do that. He didn't do that. He applied summary judgment standards improperly. Improperly. That's correct. Okay. Not that he applied the wrong legal standard. Well, when you look at it. You said that, all of a sudden, you attracted my attention, because that certainly grounds to reverse if the judge applies the wrong legal standard, doesn't know what the legal standard is. Well, in the application of the facts, he ignored our evidence. Okay. You don't like the way he decided the case based upon the facts that were presented to him. There would be no difference between the opinion that he wrote and an opinion he would write denying a preliminary injunction. I mean, he's an experienced judge. All right. Thank you for clearing that up, anyway. Mr. Stachowski, Judge Guy. Yes, sir. I just have a question about your business model, and in terms of the likelihood of confusion, could you elaborate a little bit on the arena, if you will, in which UPS and your company would come head-to-head? Where would I, as a prospective user of these services, have to make a choice? Or if you understand what I'm saying. Well, I think, Your Honor, Addendums 1 and 2 to the John McGovern Declaration support that if you look up UPS Order Link, UPS dominates the search, and there's one element there where we are disclosed. The Internet, searching the Internet for e-commerce services is where we overlap. The UPS services, UPS used to be just shipping. Now UPS decides to go further than shipping and into our domain where we are offering handling services for the retail establishments that are used, that are located on the Internet. Is UPS developing websites and things of that nature under their Order Link, or what they used to call Order Link? Your Honor, they have at least 47 different pages on their website relating to Order Link, and they were trying to take Amazon and eBay retailers into the fold with this free software that was offering services that we would normally offer to those people. Thank you. I know your time is out, but there was some indication in the record that other companies may have been using this Order Link mark, and if that's true. First of all, is that true? And if so, how does that relate to any potential confusion between Progressive's use of the mark and UPS? Well, they cited less than 10 things that they found. Half of them stopped some time ago. The two that the judge indicated were Order Links and Orders Link, which wouldn't come up in the same way on an Internet search. But the fact is that when we looked, we couldn't find them in active timing. They obviously spent significant investigative resources to find these little places out there that we never came across. But I think Addendum 1, for example, where you look up UPS Order Link, they don't show up on that search, that Internet search. Okay. Tell me this. What's the disputed issue of fact or issues that should have prevented the entry of summary judgment? I think that we listed all those in the brief, and there are numerous. Well, what are the principal ones? You don't have to – I don't want to – if there's a long list, I wouldn't want to hear all of that. It would eat up all my time. What's the principal problem here? Well, on the question of intent, I just expressed the fact to you that the district court ignored all of the – the district court took the position that UPS wasn't shown to want to take the goodwill of progressive. But that's not what they did. They intended to own the market. I'm not asking what the district court did. I'm just asking you, what are the disputed issues of fact here that should prevent the entry of summary judgment? Well, on intent, the disputed issue of fact is that the UPS knew our mark. UPS intended to take our mark and intended to own the mark. Is there any dispute about that? I don't think so, but the judge did not include it as part of his evaluation below. I thought those facts are basically indisputable. They are indisputable in our favor. Yeah, okay. I mean, all right, so I don't see why we'd have to have trial on that. I think Judge Clay is asking what genuine issues of material fact you claim exists that would warrant a trial on this, as opposed to deciding it as a matter of law. I understand. But the – Oh, can you answer my question? Yes. But the fact that we have facts that are contrary to what the judge found would reverse summary judgment and allow us to try the case on those facts. Okay, what are they that you want to try? Well, with respect to the actual confusion, for example, there's a question of fact as to whether or not the employee confusion is more or less than non-employee confusion. We're saying that their employees called us thinking that they own the mark. They're saying that that's less than non-employee confusion, and we're saying it's greater than non-employee confusion. We're saying that 100 percent confusion shut down the Internet to plaintiffs, and that is one of the aspects of this. On the strength of the mark, we're saying that the facts in our favor show that the mark is stronger than the mark of Ameritech, stronger than the mark of Big O, stronger than the mark in Thermoscan. Those are all facts that the judge either ignored or didn't review and certainly didn't balance in our favor. And with respect to the trademark examining attorney, the entire record where the trademark examining attorney rejected their mark, the judge dismissed it as having no weight, even though every case that was cited to the judge indicated it should. It sounds like a legal issue to me is whether the examiner in the patent and copyright office, whether his or her determination is entitled to weight and what weight that decision is made. I don't see that as a factual question. I see that as a legal matter. I mean, you say that's a question for the jury, how much weight to give to that decision? Well, the judge gave no weight to the decision. Well, no. Do you think it's a matter of fact or a matter of law, the amount of weight, if any, to give to that decision? All the cases that were cited by the court, by them and by us, every one of them said that that's a fact that should be presented to the jury. So the jury determines the amount of weight. Correct. It seems like an odd thing to do, but okay. All right. But the judge itself, the judge said that it had no weight. I could see you arguing that the judge erred as a matter of law by not giving that decision weight. I don't see how you can say that that's a jury question, that that isn't the province of the trier of fact. And then with respect to the relatedness of the goods, we have evidence in the record that shows the overlap of the services, and the judge said that there was no overlap of the services, and that should have gone to the jury to determine whether or not there was overlap of the services as a question of fact. All right. Thank you very much. Morning. May it please the court. My name is Tywanda Lord of Kilpatrick Townsend in Stockton, and I represent the appellees collectively referred to hereafter as UPS. The appellant's singular job in responding to UPS's motion for summary judgment was to demonstrate a genuine issue of material fact. Instead, it did not point the district court to a genuine issue of material fact. In fact, progressive in its responsive papers to our motion for summary judgment indicated to the district court that if anyone was entitled to summary judgment, it was progressive. They didn't file a motion, though. They did not file a motion, Your Honor. They cited a case, however, where a court actually said that if anyone, if they had filed a motion, then they would be in a good position to have a motion rendered in their favor. They provide that if a motion is filed by one party and the court determines the other party is entitled to it, the court has discretion to grant it to the opposite. So they argued that, in fact? They invited the court to do that. As a matter of law, they're entitled to it? Yes, Your Honor. Okay. Now, after the district court agreed that there were no material issues of fact but ruled in UPS's favor, progressive finds error where there was none and attempts to do now what they didn't do below, which is conjure up material issues of fact. This court should affirm the district court's decision because the district court applied the proper summary judgment standard, followed the law of this circuit regarding reverse confusion infringement, appropriately assigned no weight to the trademark office's examiner's preliminary opinion, and based on the undisputed facts presented to the district court, appropriately found that there were no likelihood of confusion as a matter of law. Turning to the issue of the standard that the district court followed, as the court already noted, the district court cited the summary judgment standard on page 5 of its opinion. The only reason that progressive says that the court did not follow the preliminary injunction standard is that because he cited some cases that were preliminary injunction cases, some cases that were summary judgment cases, and some cases that were on appeal after a finding at the trial court. But neither the likelihood of confusion factors nor the type of evidence considered in evaluating those factors changed because of the procedural posture of the case. The case that progressive cites to support its conclusion that the district court followed the improper standard was the Ninth Circuit case, J.L. Beveridge v. Jim Bean. And in that case, the plaintiff filed for a preliminary injunction which the court denied. When the plaintiff later filed for summary judgment, the court did not issue an independent analysis of the summary judgment standard. Rather, he just incorporated by reference his ruling and his opinion from the preliminary injunction. That is why the Ninth Circuit found that that judge used the preliminary injunction standard instead of the summary judgment standard. Those facts simply are not present here. Turning to the issue of reverse confusion, progressive has waived its newly found argument that the district court should modify its evaluation of the likelihood of confusion factors based on reverse confusion. As an initial matter, the Sixth Circuit has not ruled on that the likelihood of confusion analysis should be altered when there is a theory of infringement based on reverse confusion or forward confusion. The case that progressive cites and relies on is Ameritech, but that case did not change the standard for evaluating the likelihood of confusion factors. Rather, in Ameritech, the judge there at the district court level stated that there was, because the goods and services were unrelated and non-competing, it didn't even look at the likelihood of confusion standards, whether it was under a reverse confusion analysis or a forward confusion analysis. The court in Thermoscan, however, stated that reverse confusion in the Sixth Circuit is the same regardless of the theory of infringement. I'm sorry. It stated that the likelihood of confusion analysis is the same regardless of the theory of infringement. That's what reverse confusion is. It's a theory of infringement, not a totally different standard and way of looking at infringement. Progressive in its papers before the district court cited the definition for reverse confusion, but it did not advocate that the district court modify or alter the way in which it looked at the likelihood of confusion factors because it was a reverse confusion case. What about the fact that UPS knew about Progressive's use or reliance on the mark before UPS began to utilize the mark as evidence of intent to take advantage of confusion or at least not to avoid confusion in the marketplace? Your client knew that somebody else had the mark, and knowing that, you went ahead on and used it anyway. How should that have been weighed by the district court in connection with the motion for summary judgment? Yes, Your Honor. What the court looked at in looking at intent is not just that we knew about the mark. Because the mark was registered and because we located the mark in our research, we knew that the mark existed. But we also knew that other people used the mark order link in connection with services that were closer to what Progressive did than what UPS eventually did. As Judge Griffin pointed out, the facts are not in dispute about what we knew at the time. Yes, UPS did know that the mark was in use before it started using the mark. But they also knew that the marks were being used for totally different services. It knew that the mark was used by not just Progressive, but by others in the industry. It knew all of those things, plus the fact that order link is a descriptive mark. When UPS decided to use the mark, it was because it was linking orders from Amazon and eBay to its shipping application. That's why it chose this descriptive term as part of its mark. Of course, UPS had the resources to overwhelm the use of the mark by Progressive and some of the other users. So that in and of itself might be viewed as a way of sowing confusion by some people. What would you say about all that? When you're looking at the saturation of the mark, it appears that we might be talking about the strength of the mark and whether UPS had the commercial strength to overwhelm Progressive. As an initial point, that fact in determining the strength of the mark was not argued by Progressive at the lower court. It was only the strength of their mark and how strong it was in the marketplace. That is what they argued. It wasn't until the appellate brief that they started to try to argue UPS's strength of the UPS order link mark. I'd like to point out, however, that there's no evidence in the record of the strength of the UPS order link mark. Yes, UPS is a strong mark, but the mark at issue here is UPS order link. And there's no evidence in the record that UPS order link is a strong mark. Was there any discovery before this summary judgment proceeding was conducted and the district judge ruled in a summary judgment? Did anyone ask for discovery and was there any discovery? There was extensive discovery, Your Honor. We had over a year of discovery before the judge actually ruled on our summary judgment motion and before these motions were filed. All right. Turning to the issue of the weight of the trademark examiner's opinion, according to applicable case law, the PTO's determination may be considered, but it need not be given any weight when the PTO attorney did not review all the evidence available to the district court. In this circuit, in marketing displays versus traffic devices, it was a summary judgment case that held that no deference is due to a PTO decision with respect to evidence the PTO did not consider. Here, the district court had a full and complete record looking at how the marks are actually used in the marketplace, looking at how the services were unrelated, looking at the consumers that were targeted by these different parties. The examiner at the trademark level did not have that information. All the examiner had was the application, the UPS order link application that stated in block letters UPS order link and a description of the goods and services that the mark was intended to be used with. You refer to the decision by the trademark examiner as the preliminary opinion? Yes, Your Honor. Is that because it can be appealed? It is a preliminary opinion because the examiner, when looking at the application and comparing it to other marks on the register, will issue an office action. And that is what the examiner in this case did. Issued an office action and said that they believed that there was likelihood of confusion between UPS's order link mark and progressive order link mark, but that UPS would have a chance to respond to that office action and argue around it if they would, Your Honor. In this instance, the only thing that we have in the record is the examiner's preliminary opinion. Examiners routinely reversed their opinion as they did with progressive's own mark. Progressive received a preliminary rejection as well and were able to argue around it. That's why it's preliminary. The losing side, the preliminary opinion is against the losing side. They can submit additional information. And after they do, then it becomes, what's the term? Is it a final opinion? After the examiner issues a final rejection, the losing party then is still allowed to appeal to the Trademark Child and Appeal Board to reverse that decision. Okay. Is there a level through this process where there is deference that you concede is due to the decision from the Trademark Office somewhere up the chain? Yes, Your Honor. After the final decision, meaning after the decision has been appealed through the board, it can receive some deference. But even as the Supreme Court said in a recently issued case in BNB Hart where if the decision is based on information before the board, I'm sorry, if the decision was based on information before the board that was not complete, meaning that the district court had more or additional information, that it still should not be preclusive and it should not have issue-preclusive effect even after the fact, Your Honor. Well, I mean issue, you know, whether it's preclusive is different than whether it's entitled to some weight. And here Judge Quist gave it no weight at all. Yes, Your Honor. And there are a couple things about the reason and the way that Judge Quist went about looking at the Trademark Examiner's opinion. First, as we mentioned, it was preliminary. It had not gone through the additional argument or the appeal at the board level. But in addition, when you look at the office action itself in which the examiner rejected, our application, the examiner said in that same office action that she did not understand our goods and services. So in making her determination about likelihood of confusion, looking at the block letter marks, not the marks as they appear in the marketplace, and reviewing the relatedness of the goods and services, she admits that she didn't understand the services that UPS were providing under the mark. So that even if we were to look at just the examiner's opinion, it was an unreliable opinion based on at least incomplete and perhaps uninformed information. All right. Thank you. I have one last question. Judge Guy. Hello? Yes, Your Honor. All right. I just have this question. Assume I was a manufacturer that had traditionally been shipping things and using UPS. Once UPS had UPS Order Link, what services would you be offering me that I wasn't already getting by using you as my delivery service? So UPS Order Link, Your Honor, we wouldn't be providing any additional services. Here, the UPS Order Link service is still to facilitate shipping. It is only available to Amazon and eBay merchants. So when retailers who sell their goods through Amazon and eBay, once they sell those goods through those marketplaces, UPS Order Link shipping software would allow that user to import the shipping addresses for their customers, print shipping labels, and mail those items to their customers. There would be nothing else that UPS is providing in this instance. Thank you. Seeing that I only have one more minute, Your Honor, I wanted to address a couple of issues. One being the fact that progressive claims that Judge Quist did not review or acknowledge any of the declaration that was provided to the court that was the President, Mr. McGovern's declaration. If you look at the responsive brief that progressive provided to the court, they cited that declaration four times. Only two times, though, was it in relation at all to anything related to liability. The two instances that they used the declaration to support, one was to say that the mark was registered and that there was no other mark on the USPTO registration list that also was registered. The court clearly acknowledged that the Order Link mark was a registered and incontestable registration. The other time progressive cited to McGovern's declaration was in the facts section of its brief, and that citation was related to the search results for UPS Order Link through Bing and Yahoo. Although the court did not specifically address or state that it looked at that fact, progressive didn't argue what that fact was supposed to be in support of in its brief anyway. In addition, when you look at the conclusory statement that Mr. McGovern made and look at it compared to the actual evidence that was to corroborate that statement, there is a disconnect there. The statement was that when you search for Order Link, that UPS Order Link was the only thing that comes up. That we were saturating and dominating the marketplace. And what you find was, if you look at UPS Order Link, yes, UPS and sites related to UPS showed up in the search results. But when you search just Order Link, and this was in the record before the district court, when you search for just Order Link, particularly after December 2014, UPS was nowhere to be found. I see that my time is up. Thank you very much. I'm not certain how much time I have left. You reserved five minutes. I know I ran out of time before. Put the light on. Okay. The questions of fact here relate to various findings that the judge made. For example, the judge made a finding that they stopped. Well, they didn't stop. They don't even argue that they stopped. The judge made the finding that they stopped using the mark. They have stopped using the mark, haven't they? They have not. They have not. Well, let's just say that the impact of the use is still in existence, number one. And number two, on all of it. Are they still using the mark? I thought that was undisputed that after the trademark office made the ruling that they stopped it. No, Your Honor. After the trademark office made the ruling, they started using it. All right.  After your cease and desist letter, they stopped it. After the cease and desist letter, they still had a trillion uses after our cease and desist letter. Okay. You claim that they're still using the mark. I'm claiming that they used the mark for at least 586 days. Well, okay. That doesn't mean they're still using the mark. They may not be using it today. Okay. They've stopped using the mark. They haven't stopped using the mark in the sense that you go on, you go search UPS order link and you still get remnants of the use that go back to. . . Of the use is different than using the mark. Okay. But the judge. . . Maybe we're not speaking the same language here. But. . . I don't really want you to misrepresent the record. I'm not. If that's what you're trying to do. I'm not misrepresenting the record, Your Honor. I apologize if I can't express it correctly. But the judge ruled that they stopped using the mark in August of 2014. They did not stop using the mark in August. All right. When do you claim that they stopped using the mark? We still have activity through. . . No. When do you. . . Just answer my question. Okay. They have used the mark at least through the middle of 2015. Okay. And that's what we have in the record with the expert witness. All right. Then after 2015 they stopped using the mark. That's correct. But they still. . . You want the damages for the time that they used the mark. And maybe some residual consequential damages. That's correct, Your Honor. I understand. Yeah. But that's a question of fact. How long they kept using the mark? Well, if there's no liability, does it really matter? Well, the judge says that there was no intent because they stopped using the mark in August of 2014. I see. They don't even argue that they stopped using the mark in August 2014. The judge created that. And there's obviously a question of fact there, the way that the judge determined it, that would be very related to the question of intent. At least the judge made it a material fact relating to the question of intent. And the fact is that even they don't agree with the judge's finding. So I think that that's a triable issue of fact at a minimum, along with the other issues relating to intent, along with the other issues relating to the trademark examining attorney opinion, where a jury should be giving the weight to the opinion, both from the standpoint of the fact that that was an attorney opinion that came out before UPS started using the mark. The judge incorrectly made the determination that intent was to be viewed at the time that they thought about using the mark. And there were six months, eight months between the time they thought about using the mark and the time that they actually used the mark where they found out about our mark, where the trademark examining attorney told them that they couldn't use the mark, where they'd use the mark anyway. And they went out in a big way, trillions and trillions of uses of this mark on the Internet. They saturated the mark. But from the initial questions of fact, the basis for reverse confusion is the lens that we argued the case. They're saying that we didn't argue the case from a reverse confusion standpoint. So we argued the case on the basis of Ameritech. The judge did not look at it through the same lens. The findings that – if you compare the findings of Ameritech to this case, the findings of the district court, they're completely at odds. This is not a ThermoScan case. ThermoScan had equal trademarks. They both had – one had an incontestable trademark. The other one had a trademark that they were filing for incontestability. They had used each of them for five years. There was no disproportionate mark. Counsel, you might want to wind things up. I see your red light is on there. Well, the bottom line here is that this is the classic reverse confusion case where a dominant mark captures a senior user's mark. And that's all I have. All right. Thank you very much. The case is submitted. When the table is vacant, the next case may be called.